IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LEGACY HEMP LLC,

                Plaintiff,

v.

TERRAMAX HOLDINGS CORPORATION,

                Defendant.

OPINION and ORDER

20-cv-303-slc

---

In this civil case removed from the Circuit Court for Pierce County, Wisconsin, plaintiff Legacy Hemp LLC alleges that defendant Terramax Holdings Corporation improperly terminated the parties' distributor agreement related to the marketing and sale of hemp seed, in violation of the Wisconsin Fair Dealership Law and state law related to breach of contract and breach of the covenant of good faith and fair dealing. Now before the court are Terramax's motion to dismiss the complaint for lack of personal jurisdiction, dkt. 11, and Legacy's motion for a preliminary injunction, dkt. 14. For the reasons stated below, I find that Legacy has not made a prima facie showing of personal jurisdiction over Terramax, so I am granting the motion to dismiss. This moots plaintiff's motion for a preliminary injunction.

From the complaint and the affidavits and documents submitted by the parties in connection with the pending motion, I draw the following facts, solely for the purpose of deciding this motion. *See Purdue Research Foundation v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (court accepts all well-pleaded allegations in complaint as true, unless controverted by challenging party's affidavits; any conflicts concerning relevant facts are to be decided in favor of party asserting jurisdiction).

**JURISDICTIONAL FACTS**

Defendant Terramax Holdings Corporation is a corporation organized under the laws of Saskatchewan, Canada with its principal place of business located a few miles north of Qu'Appelle in Saskatchewan. Terramax is owned by Hugh John Oliver Campbell, a Canadian citizen and resident of Fort Qu'Appelle, Saskatchewan. Terramax maintains, produces, and sells various seeds, including the industrial hemp seed known as X-59 Hemp Nut. Campbell is the president of Terramax, which has two other employees who work outside Qu'Appelle. Terramax is not registered to do business in Wisconsin and has never (at least on its own) sold, marketed, processed, advertised, shipped, or manufactured goods in Wisconsin.

Following the enactment of the 2014 Farm Bill,[1] Russ Crawford, who was then president of the Canadian Hemp Trade Alliance, introduced Terramax to Kenneth Anderson, a long-term resident of Prescott, Wisconsin and a leader in the U.S. hemp industry. At that time, Anderson was doing business as Original Green Distribution, which was headquartered in Wisconsin, and was looking to import industrial hemp seed from Canada into the U.S. Crawford introduced Anderson to Campbell as a potential partner for distributing Terramax's X-59 hemp seed in the U.S. A February 9, 2015 email from Crawford informed Campbell that Anderson was from Original Green Distribution in Wisconsin and that he was in direct contact with eight states and 20 research agencies and universities interested in procuring hemp seed and agronomic advice. Dkt. 20, exh. A.

Over the next 14 months, Terramax and Anderson engaged telephone and email discussions about Anderson distributing X-59 hemp seed for Terramax. Anderson engaged in these communications from Wisconsin. In April 2016, Anderson, who was now doing business as Legacy,

---

[1] The 2014 Farm Bill allowed states to cultivate industrial hemp without a permit from the Drug Enforcement Administration if cultivation was part of a state's hemp research pilot program and conducted by growers who met requirements imposed by their state department of agriculture.

entered into a "Germ Plasm Transfer, Royalty, and Working Agreement" with Terramax for the distribution and sale of X-59 hemp seed over a period of seven years.

The agreement identifies Legacy as "THE AGENT" and states that Legacy's is located in Crofton, Kentucky. Anderson avers that the Kentucky address was included because it was the address of one of Legacy's first customers, and Kentucky was the only state where growing X-59 hemp seed was legal at that time. Anderson also avers that the agreement was delivered to him in Wisconsin and that he signed it there.

The agreement provides in relevant part that

> For the purposes of this agreement the phrase "specified States of the USA" shall refer to Kentucky, Illinois, Minnesota, Iowa, North Dakota, Nebraska, Indiana, and such other states as mutually agreed in writing by Terramax and THE AGENT.
>
> \* \* \*
>
> Whereas THE AGENT and Terramax wish to enter into an agreement in accordance to which THE AGENT will receive seed of the variety from Terramax to produce commercial seed therefrom, from which to sell seed into the specified States of the USA, and to pay Terramax annual royalties pursuant to the terms and conditions of this agreement.
>
> Now therefore the parties agree as follows:
>
> 1. The intent of this agreement is that Terramax grants exclusive license to THE AGENT within the specified States of the USA, and to pay Terramax annual royalties pursuant to the terms and conditions of this agreement.
>
> \* \* \*
>
> 3. THE AGENT shall use its best efforts and maintain an aggressive programme to promote the sale of the variety in the specified States of the USA. Seed of the variety shall not be marketed into States that do not strictly require the use of only certified hemp seed for planting or allow farmer saved hemp seed.
>
> \* \* \*

3

> 19. This agreement shall be governed and construed in accordance of the legal system of the district of distribution.
>
> \* \* \*
>
> 23. THE AGENT shall not market any of the variety as seed outside the USA.
>
> \* \* \*

Dkt. 1, exh. 2 at 21.

Over the next four years, Legacy and Terramax conducted their business relationship through at least monthly communications by phone, mail, and email. Anderson participated in these conversations from Wisconsin and received royalty checks there. Since 2017, Legacy has bought and sold more than 322,890 pounds of X-59 hemp seed. Dkt. 1-2 at ¶ 23. At all times, Legacy arranged to pick up the seed product at Terramax's Qu'Appelle, Saskatchewan location. Campbell avers that Legacy never informed Terramax of the destination of the product.

In April 2018, two years after executing the agreement, Legacy was registered to do business in Wisconsin. Dkt. 26, exh. 1. In emails sent on November 29, 2018 and October 17, 2019, Anderson informed Campbell that Legacy's address had changed to Prescott, Wisconsin. Dkt. 20, Exhs. B and C.

According to Anderson, Legacy's dealings with Terramax "involved directives and activities specific to Wisconsin," including the following:

> (a) In March 2018, Terramax asked Legacy to deal with a purported researcher in Nevada who was attempting to sell X-59 hemp seed in Wisconsin and was telling farmers that they could use it as breeder seed.
>
> (b) On April 30, 2018, Campbell forwarded Anderson an email from an individual who had an "interest in growing your X-59 in Wisconsin" and asked how to purchase the seed. *See* dkt. 23 at exh. 6 (copy of email).

4

      [c]      Legacy and Terramax engaged in discussions about whether X-59 hemp seed could be modified to account for the wet soil conditions in Wisconsin throughout 2018 and 2019.

      (d)      Legacy advertised, promoted, and built a market for X-59 hemp seed in Wisconsin.

Campbell has no recollection of the above discussions and does not recall Legacy responding to the above requests for information or taking any other action in Wisconsin for Terramax.

In its complaint, Legacy alleges that a majority of its 2018 sales of X-59 hemp seed were to Wisconsin farmers. Dkt. 1-2 at ¶ 23. However, Campbell avers that he never "engaged Legacy to perform any services on behalf of Terramax" because he would have expected Legacy to invoice Terramax for its time, and Campbell never received any such invoices.

**OPINION**

**I. Legal Standards**

Personal jurisdiction is "an essential element of the jurisdiction without which the court is 'powerless to proceed to an adjudication' of the merits of a lawsuit." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (internal citation omitted). When a defendant's motion is based solely on the written materials submitted, without the benefit of an evidentiary hearing, the plaintiff is only required to make a prima facie showing of personal jurisdiction. *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015); *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009); *Purdue*, 338 F.3d at 782; *Hyatt International Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). In evaluating whether the prima facie standard has been satisfied, the plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue*, 338 F.3d at 782; *see also Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (noting same).

Federal courts may exercise personal jurisdiction where a party would be amenable to suit under (1) the laws of the state where the federal court sits; and (2) where jurisdiction is consistent with the requirements of due process. *Topcon Agric. Americas, LLC v. Cote Ag Techs.*, LLC, 391 F. Supp. 3d 882, 885 (W.D. Wis. 2019) (citing *KM Enterprises, Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013)). Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts with the forum state. *Kipp*, 783 F.3d at 697. Here, Legacy contends that the court possesses specific jurisdiction, which "refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (quoting *GCIU-Employer*, 565 F.3d at 1023).

Wisconsin breaks the jurisdictional question into two parts: (1) whether Terramax is within the reach of Wisconsin's long-arm statute, Wis. Stat. § 801.05, which enumerates several different grounds for personal jurisdiction and is to be construed liberally in favor of exercising jurisdiction; and (2) whether the exercise of jurisdiction comports with the requirements of the Fourteenth Amendment's due process clause. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012); *Kuhn Knight, Inc. v. VMC Enterprises, Inc.*, 464 F. Supp. 2d 806, 811 (W.D. Wis. 2006); *Kopke v. A. Hartrodt S.R.L.*, 245 Wis. 2d 396, 408-10, 629 N.W.2d 662, 667-68 (Wis. 2001). Legacy contends that personal jurisdiction over Terramax is warranted under three different provisions of the long-arm statute: § 801.05(5)(b) regarding promises for services to be performed in the state; § 801.05(5)[c] regarding promises to deliver goods to plaintiff within the state; and § 801.05(4)(b) regarding foreign acts giving rise to a local injury. Wisconsin's long-arm statute has been interpreted to confer jurisdiction "to the fullest extent allowed under the due process clause." *Daniel J. Hartwig Associates, Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990); *see also Felland*, 682 F.3d at 678 ("[C]onstitutional and statutory questions tend to merge; compliance with the Wisconsin long-arm statute creates a

6

presumption that constitutional due process is satisfied."); *Kopke,* 629 N.W.2d at 671 ("Compliance with the [long-arm] statute presumes that due process is met, subject to the objecting defendant's opportunity to rebut."). The crucial inquiry for specific jurisdiction under the due process clause is whether Terramax's contacts with Wisconsin are such that it should have reasonably anticipated being haled into Wisconsin's courts. *International Medical Group, Inc. v. American Arbitration Association, Inc.*, 312 F.3d 833, 846 (7th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Having considering the affidavits and other written materials submitted by the parties, I conclude that Legacy has failed to make a prima facie showing that jurisdiction over Terramax comports with the requirements of the due process clause. Because the due process inquiry is the more complicated of the two, and is dispositive in this case, it is unnecessary to conduct a detailed analysis of whether Terramax falls within the reach of Wis. Stat. § 801.05. *See Felland*, 682 F.3d at 678 ("Once the requirements of due process are satisfied, then there is little need to conduct an independent analysis under the specific terms of the Wisconsin long-arm statute itself because the statute has been interpreted to go to the lengths of due process."); *Schoultz v. Swenson Spreader LLC,* 2013 WL 4456926, at *2 (E.D. Wis. Aug. 16, 2013) (doing same).

**II.  Due Process Considerations**

There are three essential requirements related to specific jurisdiction under the due process clause: (1) Terramax must have purposefully availed itself of the privilege of conducting business in Wisconsin or purposefully directed its activities at Wisconsin, *Burger King*, 471 U.S. at 472; (2) Legacy's alleged injury must have arisen from or relate to Terramax's Wisconsin-related activities, *id.*; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial

justice, *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Felland*, 682 F.3d at 673. This inquiry depends in large part on the type of claims at issue. *Felland*, 682 F.3d at 674. With respect to contract disputes like the one ultimately at issue in this case, "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *Purdue*, 338 F.3d at 781; *see also Burger King*, 471 U.S. at 478. Instead, "a context-sensitive analysis of the contract" is necessary, "examining 'prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other.'" *Northern Grain Mktg., LLC v. Greving*, 743 F.3d 487, 493 (7th Cir. 2014) (quoting *Purdue*, 338 F.3d at 781*).*

Contrary to Legacy's contention, there is little suggesting that Terramax purposefully availed itself of the privilege of conducting business in Wisconsin or directed any activities in the state. In the early days of its association with Legacy, Terramax did not have substantial contacts with Wisconsin: the parties first encountered each other via an email introduction, and although Anderson says that he participated in the ensuing discussions and negotiations from his long-time residence in Wisconsin, Legacy—the company with which Terramax entered the agreement—was not even registered to do business in Wisconsin until April 2018. The fact that Anderson was communicating on behalf of his Kentucky LLC from his personal residence in Prescott does not give Legacy a footprint in Wisconsin that serves to connect Terramax to this state. *See Northbound Group, Inc. v. Norvax, Inc.*, 795 F.3d 647, 650 (7th Cir. 2015)("The core principle of corporate law is that a corporation is a distinct legal entity, separate from its shareholders, directors, officers and affiliated corporations.") In addition, both the Supreme Court and the Seventh Circuit have made clear that "a foreign party's contract with an in-state party alone is insufficient to support personal

8

jurisdiction." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 914 (7th Cir. 2015) (citing *Burger King*, 471 U.S. at 478).

Apart from Anderson's vague references to the parties having discussed the marketing and sale of Terramax's hemp seed in the United States, there is no evidence that the initial contract negotiations or discussions targeted Wisconsin in particular. In fact, the agreement that the parties executed in April 2016 does not list Wisconsin as one of the seven specified states within which Legacy had exclusive license to sell Terramax seed. Although the crux of the parties' underlying dispute is whether the agreement permits or prohibits Legacy from selling seed in non-specified states (including Wisconsin), nothing in the agreement itself mentions Wisconsin or activities directed there. In addition, the agreement states that it is governed by the law of the "district of distribution," which cannot reasonably be interpreted to mean Wisconsin: Terramax is in Canada, Legacy is in Kentucky, and Legacy is not even licensed to do business in Wisconsin.

Legacy places great significance on the fact that Terramax continued to communicate with it by sending emails or making telephone calls to Anderson in Wisconsin. However, specific jurisdiction requires Terramax's contacts with Wisconsin to be directly related to the conduct related to Legacy's claims. *Brook*, 873 F.3d at 552 (citing *Tamburo*, 601 F.3d at 702). The mere fact that Terramax's conduct affected Legacy in Wisconsin is not sufficient to establish jurisdiction. *Id.* (citing *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014)). The Supreme Court has explained that the inquiry focuses on the relationship between the defendant, the forum, and the litigation: "the relationship must arise out of contacts that the defendant *himself* creates with the forum State," and the defendant must have contacts with the forum State itself and not just persons who reside there. *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014) (internal quotations omitted); *see also Brook*, 873 F.3d at 552-53 (quoting same).

Although he fails to provide any corroborating detail, Anderson avers that Legacy advertised, promoted, and built a market for Terramax's X-59 hemp seed in Wisconsin. Legacy also alleges that it sold product in Wisconsin starting in 2018. However, Campbell responds that if these activities occurred, he did not sanction or even know about them. For his part, Anderson generally avers that Legacy's "dealings" with Terramax "involved directives and activities specific to Wisconsin." The only directives and activities that Anderson cites are: (1) two emails from individuals expressing an interest in growing or selling X-59 hemp seed in Wisconsin, which Campbell forwarded without any instruction or explanation to Anderson in 2018; and (2) unidentified discussions that the companies allegedly engaged in concerning soil conditions in Wisconsin. Assuming that all of this occurred–as I must at this stage–none of this suggests that *Terramax* took any action in Wisconsin as a result of these requests or discussions. Without more, Legacy has not met its burden of showing that Terramax purposefully availed itself of the privilege of doing business in Wisconsin such that Terramax should have foreseen being hailed into court here.

Next, the business relationship between the parties is not the type that the Seventh Circuit has deemed sufficient for specific jurisdiction, at least as it relates to in Wisconsin. As this court has recognized, the *Lakeside* case[2] "is viewed as 'marking something of a borderline for a no-jurisdiction finding: When a defendant's contacts with the forum state have been as—if not more—limited than those of the defendant in *Lakeside*, [the Seventh Circuit] has denied personal jurisdiction.'" *Topcon*, 391 F. Supp. 3d at 887 (quoting *Northern Grain*, 743 F.3d at 494). In *Lakeside*, 597 F.3d at 598, the Seventh Circuit held that a Wisconsin court lacked personal jurisdiction over a West Virginia-based defendant whose contacts with Wisconsin were limited to ordering a product from a Wisconsin-based company without having set foot in Wisconsin. The court of appeals recognized that although the

---

[2] *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979).

performance of the contract would take place primarily within the forum state, "the contacts with Wisconsin . . . consist[ed] solely of the unilateral activity of" the Wisconsin-based plaintiff; no other circumstances indicated that the West Virginia company purposefully availed itself of the privilege of conducting activities within Wisconsin." *Id.* at 603 (internal quotation marks omitted).

Likewise, in *Northern Grain*, 743 F.3d at 495, the court of appeals found no personal jurisdiction in Illinois over a Wisconsin farmer who sold grain to an Illinois-based plaintiff. There was no evidence that the defendant farmer "engaged in any advertising or distribution efforts in Illinois—instead, he's a farmer selling grain to a single buyer who markets the grain to others." That pretty much encapsulates the relationship of Terramax and Legacy. Aside from contracting with and paying royalties to a Wisconsin-based distributor, Terramax had no relevant interaction with Wisconsin. *See id*. (noting same). There is no evidence that Terramax asked or expected Legacy to market, advertise or sell hemp seed in Wisconsin. In fact, Legacy does not dispute that it picked up the seed product it purchased from Terramax's Saskatchewan location and that it did not inform Terramax of the product's ultimate destination.

Because Legacy has not established that Terramax has sufficient minimum contacts with Wisconsin, it is not necessary to determine whether Legacy has satisfied the remaining due process factors or Wisconsin's long-arm statute. I conclude that Legacy has failed to a prima facie case of specific personal jurisdiction over Terramax. Accordingly, I am granting Terramax's motion to dismiss for lack of personal jurisdiction.

ORDER

IT IS ORDERED that:

(1) Defendant Terramax Holdings Corporation's motion to dismiss, dkt. 11, is GRANTED and this case is DISMISSED for lack of personal jurisdiction; and

(2) Plaintiff Legacy Hemp LLC's motion for a preliminary injunction, dkt. 14, is DENIED as moot.

Entered this 27th day of May, 2020.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge